UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PATRICK MORAN, as President of the EMPIRE
STATE REGIONAL COUNCIL OF CARPENTERS
and JOHN FUCHS, PATRICK MORIN, ANTHONY
MACAGNONE, MICHAEL CONROY, DAVID
HAINES, GEOFFREY JAMES, JAMES MALCOLM,
WILLIAM MACCHIONE, ALAN EHL, WILLIAM
WEITZMAN, KEVIN HICKS, JOSEPH OLIVIERI,
DALE STUHLMILLLER, ARTHUR GODSELL,           Civil Action No. 05-4716
ROBERT CARLINO, PAUL J. O'BRIEN, JR.,                     (DRH)(ETB)
JOSEPH GANIRO, ROSS PEPE, RICHARD
O'BEIRNE, JAMES LOGAN, ANTHONY
CAROPRESSO, ANTONIO MARTINS, TODD
HELFRICH and FRANK WIRT as Trustees of the
EMPIRE STATE CARPENTERS WELFARE
PENSION, VACATION, ANNUITY, SCHOLARSHIP,
APPRENTICE-TRAINING, LABOR-MANAGEMENT
COOPERATION and CHARITABLE TRUST FUNDS,

                Plaintiffs,

    -against-

FRANK SASSO, ANDREA SASSO, ROSINA
BUILDERS & GENERAL CONTRACTING
and SRC CONSTRUCTION CORP.,

                Defendants
-------------------------------------------------------------------X

**APPEARANCES:**

**Meyer, Suozzi, English & Klein, P.C.**
Attorneys for Plaintiffs
425 Broadhollow Road
P.O. Box 9064
Melville, New York 11747
By:    John H. Byington III

**Edward J. Carroll, Esq.**
Attorney for Defendants Frank Sasso, Andrea Sasso and Rosina Builders & Gen'l Contracting
2733 Route 209
Kingston, New York 12401

**HURLEY, Senior District Judge:**

Presently before the Court is Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 56, for (1) dismissal of the counterclaims of defendants Frank Sasso, Andrea Sasso, and Rosina Builders & General Contracting (collectively the "Rosina Defendants"); (2) entry of judgment against the Rosina Defendants, jointly and severally, for (a) $30,334.22 in unpaid fringe benefit contributions and wage supplements for work in calendar year 2005; (b) $120,101.72 in unpaid fringe benefit contributions and wage supplements for work in calendar year 2006; plus (c) interest, liquidated damages and attorneys' fees and costs. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

*Background*

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted.[1]

Defendants Frank Sasso and Andrea Sasso conduct business under the name of Defendant Rosina Builders & General Contracting ("Rosina Builders") as a sole proprietorship. As of June 30, 2004, Rosina Builders became a party to the Master Agreement between the Empire State

---

[1] Some of the facts set forth herein were established on Plaintiffs' first motion for summary judgment.
 The Court also notes that the Rosina Defendants failed, once again, to follow Local Rules 7.1 and 56.1. Specifically, they failed to (1) support their opposition with a memorandum of law, setting forth the points and authorities relied upon in opposition to the motion and (2) respond to Plaintiffs' 56.1 statement of material facts as to which Plaintiffs contend there is no genuine issue to be tried. Given the Rosina Defendants failure to file a response to the 56.1 statement specifically controverting Plaintiffs' assertion of undisputed material facts, the Court could, in the exercise of its discretion, deem all of Plaintiffs' 56.1 statement admitted. Nonetheless, the Court has carefully reviewed the Rosina Defendants' affidavit and exhibits for evidence in support of their position.

Regional Council of Carpenters (the "Union") and the Construction Contractors Association of the Hudson Valley (the "Association" and the "2002 Agreement"). Pursuant to the terms of the 2002 Agreement, the Rosina Builders was required to pay benefit contributions and wage supplements to the Plaintiffs' fringe benefit funds in agreed amounts and specified percentages of the wages of their employees working under the terms of the Agreement. It further provides that in the event of delinquency, Rosina Builders was "liable for all contributions due, all collection costs, including auditing and attorney fees, 20% of total due each fund as liquidated damages, plus 1-1/2 % interest for each twenty-one (21) day period the delinquency continues." Agreement Art. 20, § b.

The stated term of the 2002 Agreement was June 1, 2002 through May 31, 2006.[2] It contains, however, the following provision:

> [E]ach employer, by signing or agreeing to be bound by this Agreement thereby authorizes the [Construction Contractors] Association [of Hudson Valley, Inc. (the "Association")] to act as its collective bargaining representative for all matters pertaining to this Agreement and for subsequent negotiations, covering this multi-employer bargaining unit; and thereby expresses its unequivocal intention to be bound by group rather than individual action in collective bargaining, whether or not it becomes or remains a member of this Association. A withdrawal of such bargaining authority given to the Association by any independent signatory shall only be effective if in writing and received by the Association and the Council more than ninety (90) days prior to expiration of the stated term of this Agreement or any succeeding Agreement in effect between the Council and Association.

Agreement at 3; 34-35.

In April 2005, the Rosina Builders issued two checks totaling $28,105.84 for the payment

---

[2] As noted earlier, however, Rosina Builders did not become a signatory to the 2002 Agreement until July 30, 2004.

of fringe benefits owed on behalf of employees pursuant to the Agreement. Both checks were dishonored upon presentment for insufficient funds. There is no dispute that said monies were due and owing to Plaintiffs for worked performed by employees of Rosina Builders pursuant to the Agreement. Indeed, the Court granted Plaintiffs summary judgment for the $28,105.84 and $17,284.07 of that amount has been recovered by Plaintiffs from Defendant SRC.

Effective as of July 1, 2006, the Union and the Association entered into a successive collective bargaining agreement to the 2002 Agreement, with a stated term of July 1, 2006 through June 30, 2009 (the "2006 Agreement").

Plaintiffs commenced this action on October 6, 2005. In the complaint Plaintiffs assert six claims for relief. The first claim is for breach of contract and asserts that the Rosina Defendants failed to pay benefit contributions and/or wage supplements to the funds in the sum of at least $28,453.39 and are liable for said amount "plus such additional sums for unpaid contributions as may have and may hereafter come due during the pendency of this action, together with liquidated damages, interest thereon and the reasonable attorneys' fees, costs and disbursements of this action." The second claim asserts a breach of the Rosina Defendants' obligations under ERISA to make required contributions of at least $28,453.39 and seeks to hold them liable for said amount "plus such additional sums for unpaid contributions as may have and may hereafter come due during the pendency of this action, together with interest on the unpaid contributions at the rate set forth in the Agreement and the Trust Agreements, or as set forth in the United States Internal Revenue Code . . . from the date each such unpaid contribution became due, plus an additional amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages . . . in the amount of up to the sum of twenty (20%) of the unpaid

contributions, together with reasonable attorneys' fees, costs and disbursements . . . ." The third claim for relief seeks an order directing the Rosina Defendants to permit the Plaintiffs to conduct an audit of their books and records and the recovery of delinquent contributions as disclosed by the audit. The fourth, fifth and sixth causes of action are asserted pursuant to the Article 3-A of the Lien Law and seek the recovery of trust funds held by Defendant SRC.

The Rosina Defendants answered the complaint, denying its salient allegations and asserting three counterclaims. The first counterclaim sounds in fraud and/or misrepresentation and alleges that the Rosina Defendants hired Plaintiffs' members based on "plaintiffs['] misrepresent[ations of ] the capabilities" of its members made for the "sole purpose of inducing defendants to hire them and therefore obtain their dues and other financial benefits," and that the individuals hired were in fact so incompetent as to cause defendants to sustain delay in the completion of the referenced project. The second counterclaim asserts that Plaintiffs breached their obligations under the terms of the agreement entered into between the Rosina Defendants and Plaintiffs. The third counterclaim is for libel and asserts that in August 2005 Plaintiffs knowingly made untrue allegations in a letter to the owners of the Santa Clara Church, to wit, that the Rosina Defendants had not paid monies allegedly due to Empire State Regional Council of Carpenters for wages and fringe benefits for carpentry work performed at the church.

In October 2006, Plaintiff moved for summary judgment for (1) an award of $28,104.84 against the Rosina Defendants, jointly and severally, as unpaid contributions owed under the 2002 Agreement plus interest, liquidated damages and, attorneys' fees and costs; (2) an order compelling a payroll audit of the books and records of the Rosina Defendants; and (3) an order disgorging and distributing to Plaintiffs as lien law trust assets $17, 284.07 held by defendant

SRC. The only collective bargaining agreement cited to the Court on that first motion for summary judgment was the 2002 Agreement. By Memorandum and Order dated September 13, 2007, the Court granted Plaintiffs' motion for the $28,105.84 in unpaid fringe benefit contributions and for orders directing SRC to pay Plaintiffs $17,284.07 as Lien Law assets[3] and directing the Rosina Defendants to submit to an audit of its books and records. (*See* Memorandum dated Sept. 13, 2007 (Docket No. 26).) No judgment was entered, however, because all claims had not been determined. (*See* Order dated Oct. 24, 2007 (Docket No.29).)

The court-ordered audit having been completed, Plaintiffs now move once again for summary judgment. Plaintiffs now seek, in addition to the $28,105.84 already awarded (less the $17,284.07 received from SRC as Lien Law assets) the following amounts from the Rosina Defendants: (1) interest and liquidated damages on the $28,105.84 in the amount of $43,079.32; (2) $2,228.38 for additional unpaid contributions in calendar years 2004-05, plus interest and liquidated damages of $2,798.40 for a total of $5,026.78; and (3) $120,101.72 in unpaid contributions for calendar year 2006 plus $88,363.70 in interest and liquidated damages for a total of $208,465.42.

In support of the current motion, Plaintiffs offer the following additional facts. Effective as of July 1, 2006, the Union and the Association entered into a successor collective bargaining agreement with a stated term of July 1, 2006 through June 30, 2009 (the "2006 CBA"). The Union has not received from Rosina Builders a notice withdrawing its designation of the Association as its collective bargaining representative as provided under the 2002

---

[3] Plaintiffs have advised the Court that SRC has paid said funds over to it. Plaintiffs have not sought dismissal of the claims against SRC, taking the position that they have been rendered moot.

Agreement. Nor has Rosina Builders submitted or pursued any grievance under Article Six of the 2002 Agreement or the 2006 CBA. The audit of Rosina Builders revealed an underpayment of fringe benefits and deductions by Rosina Builders for its carpenter employees during the period January 1, 2004 through December 31, 2005 totaling $30,334.22, which amount includes the $28,105.84 awarded by the Court in its decision on the first motion for summary judgment and against which the $17,284.07 in Lien Law assets recovered from SRC must be credited. Plaintiffs' auditor also determined that there was an underpayment of fringe benefits and deductions for carpentry work performed by Rosina Builders during the calendar year 2006 totaling $120,101.72. Defendant Frank Sasso represented to the auditor that Rosina Builders had no payroll for 2006 and used subcontractors for the company's work in 2006, which subcontractors were paid amounts reflected on IRS form 1099's issued by Rosina Builders for such work. Using the 1099's for those individuals that Defendant Frank Sasso's represented performed carpentry work, the auditor divided the payments reflected on the 1099's by the applicable wage rates under the "CBA"[4] to estimate the number of covered hours represented by each 1099 payment. The resultant number of hours were then multiplied by the applicable fringe benefit rate provided under the "CBA".

In response, Rosina Defendants assert that there was no business relationship between Rosina Builders and Plaintiffs after 2005. According to Rosina Defendants,

> due to unconscionable actions of the Union, acting on behalf of the

---

[4] The auditor's affidavit does not distinguish between the 2002 Agreement and the 2006 CBA but merely refers to evaluating Rosina's compliance with its obligations "under its collective bargaining agreement with the Empire State Regional Council of Carpenters (the 'Union' and the 'CBA'), for payment of fringe benefit contributions and wage supplements for work covered by the CBA." Aff. of J. McCarthy ¶ 1.

>Fund, [Defendant Frank Sasso] notified Charles Vealy, Jr., business agent for the Union, that the defendants no longer wanted any contact or business relationship with plaintiffs. [Sasso] further notified the Union that due to the refusal of the Union to provide skilled workers and their demand that their members walk off the job, the efforts of their agents in inducing breaches of contract between SRC Construction Corp and Saint Clara Church of God and Christ, that these acts constituted a material breach and that the defendants would not honor the balance of the bargaining agreement. [Sasso] certainly made it clear that Rosina Builders would not be renewing or participating in any further bargaining agreement for the years 2006 into the future. [Sasso] also demanded arbitration to settle the outstanding issues of the monies the Union was claiming were past-due. **The plaintiffs and [the Association] were fully aware of the foregoing and any claim to the contrary is pure sham.**
>
>[Sasso] unequivocally denies that [he] authorized the Union's alter-ego Construction Contractors Association of Hudson Valley, Inc. to act as an agent on behalf of Rosina Builders to enter into a collective bargaining agreement with the term July 1, 2006 through June 30, 2009. It was very clear between Rosina Builders and the plaintiffs that there was going to be no further contact or relationship after 2005. In fact, Charles Vealy, Jr. refused to allow any Union members to work on any site where Rosina Builders was a contractor after 2005 up until and including the present.

Aff. of F. Sasso ¶¶ 11-12 (emphasis in original).

*Discussion*

**I.      Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing

8

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. See *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not

9

be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.* 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir.1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

## II. Plaintiffs are Entitled to Dismissal of Defendants' Counterclaims

Plaintiffs represent an unincorporated association, the Empire State Regional Council of Carpenters, and are the trustees of its various welfare funds. (*See* Complaint ¶¶ 4-7.) It is well-established that "[New York] law makes an unincorporated association liable for the torts of its members only where the unlawful acts are authorized or ratified by each member of the association." *Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union*, 38 F.3d 626, 627 (2d Cir. 1994) (citing *Martin v. Curran*, 303 N.Y. 276 (1951)). "Thus, with respect to an unincorporated association such as a labor union, a cause of action exists under state law only when it was authorized or ratified by each member." *McIntyre v. Longwood Cent. Sch. Dist.*, 2008 WL 850263, at * 13 (E.D.N.Y. Mar. 27, 2008) (citing *Girolamo v. Teamsters Local 272*, 1998 WL 889039 (S.D.N.Y. Dec. 21, 1998); *R.M. Perlman Inc. v. N.Y. Coat, Suit, Dresses,*

*Rainwear & Allied Workers' Union Local 89-22-1*, 789 F. Supp. 127, 131-32 (S.D.N.Y. 1992)); *accord Jund v. Town of Hempstead,* 941 F.2d 1271 (2d Cir. 1991); *Building Industry Fund v. Local Union No. 3*, 992 F. Supp. 162, 195 (E.D.N.Y. 1996), *aff'd mem.*, 141 F.3d 1151 (2d Cir. 1998). As Defendants have failed to allege authorization or ratification, the counterclaims must be dismissed. In addition, Defendants' first and second counterclaims fall within the ambit of the broad arbitration clause in the 2002 Agreement and therefore must be dismissed. *See, e.g., Pathmark Stores Inc. v. United Food & Comm"l Workers Local 342-50*, 204 F. Supp.2d 500 (E.D.N.Y. 2002); *Tile Setters & Tile Finishers Union of N.Y. and N.J. Local Union No. 7 v. Spring St.*, 2007 WL 922286 (E.D.N.Y. Mar. 26, 2007).

### III. Plaintiffs Are Entitled to Summary Judgment for Claims Arising Under the 2002 Agreement

Plaintiffs maintain that the Rosina Defendants are liable for unpaid benefit contributions under the 2002 Agreement, admittedly signed by the Rosina Builders, as well as contributions for work under the successor agreement, the 2006 CBA. In opposing the motion, Rosina Defendants' argue that Plaintiffs are not entitled to damages accruing after 2005 because damages which accrue after the commencement of the action are not recoverable, and, in addition, that they are not a party to the 2006 CBA based on (1) the notification to Charles Vealy, Jr., business agent for the Union that Rosina Defendants no longer wanted any contact or business relationship with the Union; (2) the commencement of this action; and (3) the Union's unlawful conduct and Rosina Defendants' assertion of counterclaims based on said conduct. It is not necessary, however, for the Court to determine whether or not the Rosina Builders is a party to the 2006 CBA.

With respect to the first motion for summary judgment, Plaintiffs only provided the 2002 Agreement to the Court. No mention was made of the 2006 CBA even though that motion was made in October 2006, after the 2006 CBA's effective date. In an action for unpaid contributions under ERISA "a district court has discretion to award ERISA damages that accrue during the pendency of an action." *Ames v. Stat Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005); *accord Dicesare v. McCarey Contracting Group, Inc.*, 2007 U.S. Dist. LEXIS 13316, at *2-3 (N.D.N.Y. Feb. 26, 2007). Here, given Plaintiffs' earlier failure to advise the Court of the 2006 CBA, the sound exercise of the Court's discretion mandates allowing Plaintiffs to recover those unpaid contributions ( together with interest and penalties) accruing under the 2002 Agreement but not the 2006 CBA.[5]

Rosina Defendants have proffered no evidence that creates a material issue of fact as to their liability for contributions under the 2002 Agreement, which expired on May 31, 2006. Inasmuch as the audit report for 2006 submitted by Plaintiffs is for the entire 2006 calendar year, Plaintiffs shall be directed to submit to the Court a statement of the amount of unpaid contributions for the period January 1, 2006 to May 31, 2006 as found by their auditor, together with a calculation of the amount of interest and liquidated damages thereon.

There being no material issue of fact with respect thereto, for the period prior to January 1, 2006, Plaintiffs are entitled to recover as follows:

1.     $53,901.09 consisting of (a) unpaid contributions of $10,821.77 (consisting of $28,105.84, as determined on first motion for summary judgment, less $17,284.07 for the

---

[5] To the extent Plaintiff swish to recover for unpaid contributions under the 2005 CBS they are free to commence a separate action.

SRC payment); (b) interest (as set forth in the 2002 Agreement at the rate of "1-1/2% for each twenty one (21) day period ) thereon through May 29, 2008[6] in the amount of $21,539.66 ; and (c) liquidated damages in the amount of $21,539.66; plus the amount of $15.46 per day from May 30, 2008 to the date of judgment; and

2. $5,026.78 consisting of (a) unpaid contributions in the amount of $2,228.38; (b) interest thereon through May 29, 2008 in the amount of $1,399.20; and (c) liquidated damages in the amount of $1,399.20; plus the amount of $3.18 per day from May 30, 2008 to the date of entry of judgment.

### Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment is granted to the extent that (1) Plaintiffs shall recover unpaid contributions through May 31, 2006, plus liquidated damages and interest, and (2) Defendants' counterclaims are dismissed; and denied to the extent it seeks unpaid contributions accruing after May 31, 2006. Plaintiffs shall, within twenty (20) days of the date hereof, serve and file a statement of the amount of unpaid contributions for the period January 1, 2006 to May 31, 2006, as found by their auditor, together with the amount of interest and liquidated damages thereon.

**SO ORDERED.**

Dated: Central Islip, New York
February 17, 2009

/s/
Denis R. Hurley
Senior District Judge

---

[6] May 29, 2008 is the date the instant motion was served.